### JOHNSON v. PENNSYLVANIA R. CO.

(Supreme Court, Trial Term, Kings County. February, 1899.)

RAILROADS—INSURANCE—RELIEF DEPARTMENT—DISCHARGE.

The rule of the Relief Department of a railroad was that its responsibility to any member should end when he ceased to be employed by the company. The company wrote a member who was in its permanent service, but who had wandered away from his post while drunk, that for his intoxication while on duty, and continued absence without permission, he was discharged. The member was, in fact, dead when the notice was sent. *Held*, that he had not quitted the service nor been discharged during his life, and hence the Relief Department was liable for his death benefit.

Action by Peter Johnson against the Pennsylvania Railroad Company. Motion for judgment on special verdict. Judgment for plaintiff.

This is an action to recover a death benefit.

Through its Relief Department the defendant administers a relief fund established by it for the benefit of its permanent employés. The fund is made up of fixed contributions deducted monthly by the defendant from the wages of employés who are members of such fund. Fixed sums are paid by the defendant to such members when they are disabled by sickness or injuries by accident, and to the relatives or specified beneficiaries of members who die. The members are classified and their contributions and benefits fixed according to their wages. Sidney Johnson was employed by the defendant as captain of a barge. He was employed for no fixed term, but belonged to the permanent service of the defendant. He was paid monthly at the rate of 20 cents the hour. He was a member of the said relief fund. The death benefit in his class was $250. He specified his wife as the beneficiary in his

application for membership to the said relief fund. The plaintiff is her assignee. About noon on November 18, 1896, the said Sidney Johnson went away from his barge which was loading at a dock in Brooklyn. He was somewhat under the influence of liquor. He did not return; and in the evening of that day the mate took the barge laden across to her destination in Harsimus Cove, N. J. The next morning Johnson was seen by his brother-in-law Nelson going towards the Hamilton Ferry in Brooklyn. He said he was going over to Jersey to find his boat. On the morning of November 19th he was seen in Hamilton avenue, Brooklyn, under the influence of liquor by Capt. Hubbard of one of the defendant's tugs. On the morning of November 22d he was seen in New York City by a lighter watchman employed by the defendant. He was at the corner of West and Cortlandt streets, going in a direction away from the water front. These are the only times (so far as there is any evidence) that he was seen alive after leaving his barge. Up to the time of his disappearance he had been in the employment of the defendant as such barge captain for about 10 years, and was of sober and regular habits. He was married and had a room in 660 Henry street, Brooklyn, but his wife was in Sweden in charge of some real property they owned there. On November 28th the defendant mailed to him the following letter:

"New York, N. Y. Novr. 28, 1896.

"To Sidney Johnson, Late Capt. P. R. R. Barge Harrisburg, 660 Henry St., Brooklyn, N. Y.: I have to inform you that for your recent intoxication while on duty and continued absence from the barge without permission, you have been discharged from the service of this company. If you will call at this office and bring with you your certificate of membership in the Relief Department, I will arrange for payment to you of all wages now due you.

Yours truly,    E. G. Osborn, Master."

This was the only evidence of anything done by the defendant to discharge him. The letter remained unopened until his wife returned from Sweden in the following spring. He had obtained leave of absence from the defendant in the fall of 1895 to go home to Sweden, and upon his return after about five months resumed his old place. On May 6, 1897, his body was found in the Hudson river at Hoboken. It was decayed beyond recognition, but was identified by the clothing.

At the close of the testimony for both sides counsel for the defendant moved the court to direct a verdict for the defendant on the ground that if dead the said Johnson had ceased to be employed by the defendant before his death. At the suggestion of the court it was submitted to the jury to find if Johnson were dead, and if so, if he died before November 28th, the date of the said letter of the defendant to him; the court to reserve the said question of his having ceased to be employed, and to direct judgment for the defendant or for the plaintiff on such special verdict. The jury found both questions in the affirmative. Rule 62 of the Relief Department of the defendant, which was read in evidence, is as follows: "The responsibility of the Relief Department to any member shall end when he ceases to be employed by the company, excepting for benefits to the payment of which he shall have become previously entitled by reason of accident or sickness occurring while in the service."

Each side now moves the court for judgment on the said special verdict.

William S. Lewis, for plaintiff.
Charles M. Hough, for defendant.

GAYNOR, J. Counsel for the defendant presented the single question whether the deceased had not ceased to be employed by the defendant before his death, and asked the court to direct a verdict for the defendant. It is settled by the special verdict that the deceased died before November 28th, when the formal letter of defendant to him notifying him of his discharge was mailed. The question therefore is

whether he continued in the employment of the defendant until his death. If this depends on the intention of the deceased as manifested by his acts, it may be that it is a question of fact. But it was treated by the defendant's counsel as a question for the court. No request was made for its submission to the jury, nor is it now claimed that it was a jury question. The court was and is asked to decide it. The rule of the Relief Department of the defendant read in evidence is that "the responsibility of the Relief Department to any member shall end when he ceases to be employed by the company," i. e. the defendant. This rule was part and parcel of the contract of the deceased with the defendant as a member of the said relief fund. Within its meaning I think he was still an employé of the defendant at the time of his death. He was in the permanent service of the company. Absence without leave did not ipso facto end such service. That was for the defendant to say, and it did not say it until November 28th, which was after his death. The fact that the defendant had taken upon itself to administer this relief fund of its employés should not obscure the question. If the employés had their own relief organization, as is common, and this action were against it, the standpoint from which the said rule is to be viewed might be plainer. It would then be seen that the mere fact of an employé leaving work under the influence of liquor might not as matter of law terminate his permanent service. Such service continues until either employer or employed terminates it. The letter of discharge is that the deceased was discharged for intoxication while on duty "and continued absence" without permission. This shows that the defendant did not deem him out of its service at once, but only after a continuance of the absence. For that it elected to discharge him. I find that the deceased did not intend to terminate his service, and did not do so; nor did the defendant do so during his lifetime.

I direct judgment for the plaintiff for $275 on the special verdict.